**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT L. WOLFE,** | : | **Case No. 2:24-cv-535** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **District Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **HOCKING COUNTY SHERIFF'S** | | |
| **DEPARTMENT, et al.,** | | |
| | | |
| **Defendants.** | | |

<u>**ORDER AND REPORT AND RECOMMENDATION**</u>

Before the Court are Defendants' Motions for Judgment on the Pleadings (Docs. 25, 31). The Undersigned **RECOMMENDS** that the Motions (Docs. 25, 31) be **GRANTED in part** and **DENIED in part**. Other parts are **HELD IN ABEYANCE**. As for Defendants' Motion to Stay Discovery and Dispositive Motion Deadlines (Doc. 37), it is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

Plaintiff, who proceeds *pro se*, sues Defendants under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Doc. 11 at 4 (allowing Plaintiff to proceed on certain claims and recommending others be dismissed)). Plaintiff lives in Hocking County, Ohio. On February 22, 2023, the Athens County Court of Common Pleas issued a civil protection order ("CPO") that forbade Plaintiff from having contact with Hocking County detective J. Thomas McKnight. (Doc. 29 at 6–8). The CPO also contained the following language:

> [Plaintiff] shall turn over all deadly weapons owned by [Plaintiff] or in [Plaintiff]'s possession to the law enforcement agency that serves [Plaintiff] with this Order no later than as follows: Date of Full Hearing [on February 28, 2023] or At the time of service of the civil stalking protection order by the Sheriff's Office.

(Doc. 29 at 8–9, 10).

The next day, Defendants, former and current deputies with the Hocking County Sheriff's Department, came to Plaintiff's home to serve the CPO. (Doc. 12 at 4). Defendants encountered him on his porch. (Doc. 12 at 4). According to Plaintiff, after Defendants served him with the CPO, Defendant Moritz "lied" to him and said they must immediately take all of Plaintiff's firearms. (*Id.*). Then, Defendant Moritz assaulted him, causing lasting injuries. (*Id.* at 5). After that, Defendants Wilderman, Arnett, Johnson, and Moritz entered Plaintiff's home "without warrant and without permission," searched his home, and seized his firearms. (*Id.* at 4, 7). Once the search and seizure ended, Plaintiff says Defendant Johnson filed a "false charge of Obstructing Official Business" against Plaintiff, which was "dismissed due to lack of evidence." (*Id.* at 5). Plaintiff also accuses Defendant Moritz of unconstitutionally arresting him for assault. (Doc. 12 at 4).

For their part, Defendants claim that Defendant "Moritz explained the [CPO] required Plaintiff to not possess any firearms, and if he possessed any firearms[,] they would have to be turned in." (*Id.*). But Plaintiff declared he would not comply with the CPO and turned to enter his home. (*Id.* at 2–3). Concerned about "their safety," Defendants engaged in a "physical encounter" with Plaintiff. (*Id.* at 3). After that, they say Plaintiff consented to the search for and seizure of his firearms. (*Id.*).

On June 20, 2024, Defendants Johnson, Wilderman, and Arnett filed a motion for judgment on the pleadings. (Doc. 25). On July 23, Defendant Moritz sought similar relief. (Doc. 31). Then, on October 30, 2024, Defendants jointly moved to stay the case until the Court resolves the

dispositive motions. (Doc. 37). The motions are ripe for consideration. (Docs. 25, 29, 30, 31, 33, 35, 37).

## I.      STANDARD

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." *Williamson v. Recovery Ltd. P'ship,* No. 2:06-cv-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted). In examining a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999). As such, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop*, 520 F.3d at 519 (internal quotation marks omitted). In short, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not enough. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.     DISCUSSION

At the outset, the parties ask the Court to consider a host of evidence, including a copy of the CPO served on Plaintiff on February 23, 2023; a police report attached to Defendants Wilderman's, Arnett's, and Johnson's answer; and various pieces of evidence on a thumb drive submitted by Plaintiff.  (*See* Doc. 29 at 6–10; Doc. 30 at 1–2 n.1; Doc. 31 at 2 (citing Doc. 29 at 6); Doc. 18-3 (police report); Doc. 33 at 5–6 (explaining evidence on a thumb drive sent to the Court)).  But generally, on a Rule 12 motion, the Court's view is focused on the pleadings.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("[A] court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings.").  And the Court's ability to go beyond the pleadings is limited to "exhibits attached to the complaint, public records, items appearing in the record of a case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein.'"  *Desai v. Geico Casualty Co.*, 541 F.Supp.3d 817, 822 (S.D. Ohio 2021) (quoting *DeShetler v. FCA US LLC*, No. 3:18-cv-78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018)).

At this stage, the only additional evidence the Court may consider is the CPO.  *Ward v. Stucke*, 395 F.Supp.3d 940, 944 (S.D. Ohio 2019) (stating courts may consider matters of public record and orders on a Rule 12(c) motion); *Desai*, 541 F. Supp.3d at 822 (same).  The rest must wait until a later stage of this case.  For example, the police report attached to Defendants Wilderman, Arnett, and Johnson's Answer is not the kind of "written instrument" allowed under Federal Rule of Civil Procedure 10(c).  *See Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, at *2 (S.D. Ohio Apr. 19, 2017) (noting that "notes from witnesses" are not written instruments and that generally only "documents evidencing legal right[s] or duties" qualify); *Knight v. Kitchen*,

4

No. 2:19-cv-4166, 2020 WL 5640442, at *4 (S.D. Ohio Sept. 22, 2020) ("[F]or the purpose of ruling on a Rule 12 motion . . . police incident reports are not 'public records.'"). As for Plaintiff's evidence, none of it was discussed in-depth in his Amended Complaint. *See, e.g.*, *Bradley v. Jefferson Cnty. Pub. Sch.*, No. 3:20-cv-450, 2022 WL 1184022, at *4 (W.D. Ky. Apr. 19, 2022) (excluding exhibits attached to the complaint because they were not referenced in the complaint or central to the claims). And although Defendant Moritz urges the Court to consider the body camera footage submitted by Plaintiff, (Doc. 35 at 3–4, 8, 9), courts only examine such footage on a Rule 12 motion if "the videos . . . blatantly contradict or utterly discredit the plaintiff's version of events." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2004) (internal quotation and quotation marks omitted). That is not the case here.

In sum, the Undersigned will consider the CPO but declines to consider the other materials. With that, the Court turns to the substance of Defendants' Motions.

### A.    Claims Against Defendants in Their Official Capacities

To begin, Defendants Wilderman, Arnett, and Johnson move for judgment on any claims brought against them in their official capacities as employees of the Hocking County Sheriff's Department. (Doc. 25 at 5–7). Briefly, in his Amended Complaint, Plaintiff sues all Defendants in their individual and official capacities. (Doc. 3 at 2–3). At the outset of this case, Plaintiff also sued the Hocking County Sheriff's Department. (*Id.* at 1). After screening that Complaint, the Undersigned recommended dismissing the Sheriff's Department because Plaintiff failed "to allege any facts showing that any named Defendant acted pursuant to a particular policy or custom of Hocking County in allegedly violating his civil rights." (*Id.* at 6). Plaintiff filed an objection to that recommendation, which remains pending before the District Judge. (Doc. 7 (arguing the Sheriff's Department should be liable for the actions of its employees due to liability insurance)).

Little has changed since the Undersigned's prior recommendation. Importantly, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental agency." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). For Plaintiff's official capacity claims to survive, he must plead "sufficient facts to establish that the alleged constitutional violations happened because of the execution of the County's policy." *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (internal quotation and quotation marks omitted). Plaintiff identifies no county policy under which Defendants operated when they served him with the CPO. (*See* Doc. 12). Nor does he allege a "causal link" between a policy or practice and the alleged violations of his constitutional rights. (*Id.*); *see Graham ex rel. Est. of Graham*, 358 F.3d at 383. Without more, Plaintiff cannot make out a claim against Defendants in their official capacities. *See, e.g.*, *Sherick v. Champaign Cnty.*, No. 3:12-cv-219, 2012 WL 6738671, at *2 (S.D. Ohio Dec. 31, 2012) ("[S]uing a county employee in his official capacity is the same as suing the county directly and both require that the plaintiff identify a policy or custom that caused the plaintiff's injury."); *Aladimi v. Hamilton Cnty. Just. Ctr.*, No. 1:09-cv-398, 2012 WL 292587, at *10 (S.D. Ohio Feb. 1, 2012) (dismissing official capacity claims against county officials for failing to identify a policy or custom that motivated the defendants' conduct), *report and recommendation adopted*, No. 1:09-cv-398, 2012 WL 529585 (S.D. Ohio Feb. 17, 2012).

Therefore, the Undersigned **RECOMMENDS GRANTING** Defendants Wilderman's, Arnett's, and Johnson's Motion for any claims brought against them in their official capacities. The Court now turns to Plaintiff's claims against Defendants in their individual capacities.

**B.     Fourth Amendment Claims**

Defendants challenge numerous claims brought against them under the Fourth Amendment.  The Undersigned addresses each in turn.

*1.     Search of Plaintiff's Home and Seizure of his Firearms*

Plaintiff alleges that Defendants violated his Fourth Amendment right against unreasonable searches and seizures when they entered his home, searched it, and seized his firearms.  (Doc. 12 at 4, 7).  Defendants respond that they are entitled to qualified immunity.  (Doc. 25 at 12–14; Doc. 30 at 1–2; Doc. 31 at 6–8; Doc. 35 at 4–6).

Qualified immunity protects law enforcement officers from civil liability unless (1) the officials violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct.  *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).  This second prong gives officers great leeway.  Indeed, qualified immunity "applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001).  To that end, specificity is essential; "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation omitted) (emphasis in original).  Further, even if officers make "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," qualified immunity protects them.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Said simply, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 431 (1986)).

Beginning with the constitutional right at issue here, the Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  And "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586 (1980).  But that is just a presumption.  Put plainly, "the Fourth Amendment does not prohibit all unwelcome intrusions on private property[,] only unreasonable ones."  *Caniglia v. Strom*, 593 U.S. 194, 198 (2021) (internal quotation and quotation marks omitted).

For this claim, the parties' arguments come down to the CPO's language.  Plaintiff says that the CPO did not authorize Defendants to enter his home or seize his firearms because it gave him the choice to turn in his firearms at the February 28 hearing.  (Doc. 12 at 4).  By ignoring that choice, Defendants violated his Fourth Amendment right against warrantless searches and seizures in his home.  (*Id.* at 4, 7).  In contrast, Defendants say the CPO prohibited Plaintiff from possessing firearms as soon as it went into effect.  (Doc. 30 at 2; Doc. 31 at 11–12).  As a result, Defendants argue it was reasonable for them to interpret the CPO as giving them the authority to search for and seize Plaintiff's weapons when they served the CPO on February 23.  (Doc. 31 at 11–12; Doc. 30 at 1 n.1).

After reviewing the CPO, the Court finds Defendants' take is reasonable.  On its face, the language of the CPO can be read different ways.  On the one hand, it seemingly gives Plaintiff discretion as to when he could forfeit his firearms.  For example, the CPO says Plaintiff "shall turn over all deadly weapons . . . no later than Date of Full Hearing *or* At the time of service of the civil stalking protection order by the Sheriff's Office."  (Doc. 29 at 8–9 (emphasis added)).  On the other hand, the CPO provides that as of February 22, Plaintiff was not permitted to possess

firearms. (*Id.* at 8). And by stating that Plaintiff "shall turn over all deadly weapons . . . *no later than* . . . the time of service of the [CPO] by the Sheriff's Office," the CPO makes uncertain whether Plaintiff could possess firearms after service of the CPO. (*Id.* at 8–9 (emphasis added)). When read together, these provisions can be interpreted as (1) prohibiting Plaintiff from having firearms as of February 22 and, consequently, (2) authorizing Defendants to seize any in his possession at the time of service. In the end, that is precisely what Defendants did. After serving the CPO, they entered and searched Plaintiff's home for the limited purpose of seizing any firearms he possessed.

Still, Plaintiff argues that the CPO is not a warrant, so Defendants were not entitled to search his home or seize property under it. (Doc. 33 at 4). But the CPO shares some similarities with a warrant. For example, the CPO was signed by an Athens County judge, noted that Plaintiff had firearms he was no longer allowed to possess as of February 22, and arguably allowed Defendants to take possession of the firearms "[a]t the time of service." (Doc. 29 at 6–9). And in similar situations where officers searched a home and seized property under a court order—instead of a warrant—courts have held that the officers' actions were not a violation of clearly established law. *See Orr v. Rogers*, No. 21-10397, 2021 WL 4075740 (11th Cir. Sept. 8, 2021) (affirming a grant of qualified immunity on the clearly established prong where officers searched the plaintiff's home and seized property listed in a divorce order); *Bates v. Harvey*, 518 F.3d 1233, 1244–49 (11th Cir. 2008) (finding a Fourth Amendment violation where officers entered a woman's home to search for her son's friend pursuant to a civil commitment order, but concluding the right was not clearly established because a reasonable officer could have believed exigent circumstances justified the entry and search); *Andrews v. Hickman Cnty.*, 700 F.3d 845, 860–64 (6th Cir. 2012) (finding social workers and case workers entitled to qualified immunity where they entered a home

to investigate a referral to children's services because precedent did not clearly establish that the Fourth Amendment applied to them).

This Court joins these courts and decides the same. After all, qualified immunity protects all but the "plainly incompetent" or those who "knowingly violate the law." *Wesby*, 583 U.S. at 63. So here, the deciding question is whether "every officer in [Defendants'] position[s], measured objectively," would have read the CPO as prohibiting them from searching Plaintiff's home and seizing his firearms. *Bills v. Aseltine*, 52 F.3d 596, 603 (6th Cir. 1995). Given the CPO's ambiguous language and Defendants' reasonable interpretation of its provisions, the Court cannot answer that question with a yes. *See, e.g.*, *Armstrong v. City of Melvindale*, 432 F.3d 695, 700–01 (6th Cir. 2006) ("[I]f there can be reasonable disagreement, then the right cannot be considered 'clearly established.'"); *Lamar v. Boles*, 714 F.Supp.3d 987, 1006–08 (M.D. Tenn. Jan. 31, 2024) (granting qualified immunity where the defendants' interpretation of a statement in a search warrant affidavit and their reading of relevant regulations were not objectively unreasonable). As a result, Defendants are entitled to qualified immunity, and their Motions should be granted for Plaintiff's search-and-seizure claim.

### 2.    *Malicious Prosecution and False Arrest Claims*

Next, in his Amended Complaint, Plaintiff says that Defendant Johnson filed an "intentional false report/charge" of obstructing official business against him that was later dismissed by the Hocking County Municipal Court for lack of evidence. (Doc. 12 at 3, 4). Defendants Wilderman, Arnett, and Johnson interpret those allegations as pleading a malicious prosecution claim under Section 1983 and move to dismiss the claim. (Doc. 25 at 9–10).

The Sixth Circuit recognizes a claim of malicious prosecution under the Fourth Amendment, "which encompasses wrongful investigation, prosecution, conviction, and

incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). Ultimately, to prevail on such a claim, Plaintiff must prove that "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, [Plaintiff] suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in [Plaintiff's] favor." *Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes*, 625 F.3d at 308). Defendants challenge the third element and say Plaintiff fails to allege "a deprivation of liberty." (Doc. 25 at 9–10).

The Undersigned agrees. At this stage, Plaintiff must allege facts allowing this Court to infer he suffered a deprivation of liberty "apart from the initial seizure." *Thornton v. City of Columbus*, 171 F.Supp.3d 702, 710 (S.D. Ohio 2016) (quoting *Sykes*, 625 F.3d at 308–09). "That deprivation need not be imprisonment, and the law deems a person 'continued to be seized for Fourth Amendment purposes when their freedom of action is restrained due to the pending criminal proceedings (e.g, restrictions on travel, and requirements to appear)." *Id.* (internal quotation and quotation marks omitted). But in his Amended Complaint, Plaintiff notes only his initial arrest. (Doc. 12 at 3–4). Because a malicious prosecution claim requires more, this claim fails. *See Dillon v. Hamlin*, 718 F.Supp.3d 733, 744–45 (S.D. Ohio 2024) (dismissing a malicious prosecution claim where the plaintiff failed to include her pretrial release program in her complaint); *Ghaster v. City of Rocky River*, 913 F.Supp.2d 443, 455–56 (N.D. Ohio Sept. 26, 2012) (adopting a recommendation to dismiss a malicious prosecution claim where plaintiffs generally asserted they "suffered a loss of liberty" but provided no specifics).

But Defendants read Plaintiff's challenges to his arrest too narrowly. His allegations point to another Fourth Amendment claim—one for false arrest. (*See* Doc. 29 at 2 (arguing that a false

arrest is an exception to qualified immunity), 3 (noting a potential charge in this matter is "false arrest"); Doc. 33 at 3 (stating he was "falsely arrested" by Defendant Moritz)).

"It is well established that any arrest without probable cause violates the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). "For a police officer to have probable cause for an arrest, there must be 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Whether probable cause exists is a question for a jury, "unless there is only one reasonable" and possible determination. *Thacker*, 328 F.3d at 255. Importantly, Defendants could lawfully arrest Plaintiff "so long as there [was] probable cause to arrest [him] for some crime, even if the crime for which there [was] probable cause [was] different from the stated crime of arrest." *D.D. v. Scheeler*, 645 F. App'x 418, 424 (6th Cir. 2016). For this claim to proceed, Plaintiff must plausibly allege facts showing that his arrest was "unsupported by probable cause." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015).

Plaintiff's allegations are light. (*See* Doc. 12 at 4, 7). First, he states that Defendant Johnson intentionally and falsely charged Plaintiff with obstructing official business. (*Id.* at 3–4). This charge was eventually "dismissed due to lack of evidence" in the Hocking County Municipal Court. (*Id.*). Second, Plaintiff says that Defendant Moritz falsely arrested him for assault and detained him on his porch. (*Id.* at 4). Lastly, Plaintiff notes that Defendants came to his home without a warrant. (*Id.*).

In their Motions, Defendants Moritz and Johnson argue that Plaintiff has not pled "sufficient factual allegations" for this claim to survive. (Doc. 31 at 11; *see also* Doc. 25 at 8 n.2

(asserting the Amended Complaint does not "clearly set forth" Fourth Amendment claims)). Once more, the Court agrees. To start, Plaintiff's allegations are wholly conclusory. *See Dillon*, 718 F.Supp.3d at 738 (stating that "conclusory allegations or legal conclusions masquerading as factual allegations" cannot withstand a Rule 12 motion). While Plaintiff asserts Defendants Moritz and Johnson falsely arrested him and intentionally mischarged him, he provides no additional information about his or Defendants' actions prior to and during his arrest. (*See* Doc. 12 at 3–4); *Turner v. Fallen*, No. 92-cv-3222, 1993 WL 15647, at *6 (N.D. Ill. Jan. 22, 1993) (finding a Fourth Amendment wrongful arrest claim insufficiently pled where it rested solely on allegations that "the police officers had no probable cause" and that "the charges were later dropped"); *Cook v. Gov't of Columbus*, No. 2:18-cv-354, 2019 WL 2124472, at *3 (S.D. Ohio May 15, 2019) (dismissing a wrongful arrest claim where the plaintiff said only that an officer "wrongfully arrested her"); *cf. Compton v. Louisville Metro. Gov't*, No. 3:19-cv-348, 2021 WL 12307481, at *3 (W.D. Ky. July 16, 2021) (allowing a wrongful arrest claim to proceed where the plaintiff alleged "he was arrested and charged with 'obstructing governmental operations' . . . even though 'at no time did he obstruct, impair or hinder the performance of a governmental function'" and where he provided facts about the incident); *Estep v. Combs*, 366 F.Supp.3d 863, 872–73 (E.D. Ky. 2018) (denying a motion to dismiss a false arrest claim where the plaintiff alleged "he was not engaged in any illegal activity when" arrested, "that he did not resist," and that there was no probable cause to justify the arrest).

What's more, the fact that Plaintiff's charge was eventually dismissed does not save his claim because "an arrest grounded in probable cause does not become invalid simply because charges are later dropped[.]" *Manley v. Paramount's Kings Island*, 299 F. App'x 524, 530 (6th

Cir. 2008). In short, Plaintiff must do more to sufficiently plead that Defendants lacked probable cause to arrest him.

Perhaps recognizing these pleading deficiencies, Plaintiff sent additional evidence with his response to Defendant Moritz's Motion. (Doc. 33 at 5–6 (stating he should not have used a "short form" when filing this action and should have submitted evidence with his complaint)). These materials, according to Plaintiff, contain "proof" that supports his unconstitutional arrest claim. (*Id.* at 6). Throughout the briefing, Plaintiff also provides more details on Defendants' conduct. (*Id.* at 3, 4 (discussing actions Defendants Johnson and Moritz took)). Even so, these allegations were not included in Plaintiff's Amended Complaint. *See Bates*, 958 F.3d at 483–84 (noting that plaintiffs cannot amend their complaints in opposition briefs and must file a motion to amend). Accordingly, the Court cannot consider the new allegations here.

Still, the Court recognizes that Plaintiff is proceeding in this action without the assistance of counsel. As such, the Court **GRANTS** Plaintiff leave to amend his complaint for his false arrest claim. Plaintiff is **ORDERED** to file his amended complaint **on or before December 6, 2024**. Until then, Defendants' Motions (Docs. 25, 31) are **HELD IN ABEYANCE** for this claim. Once Plaintiff amends his complaint, the Court will issue a supplemental Report and Recommendation for Defendants' Motions and conduct the required initial screen under 28 U.S.C. § 1915.

### 3. *Excessive Use of Force by Defendant Moritz*

Next is Plaintiff's excessive force claim. To begin, in his Amended Complaint, Plaintiff says that Defendant Moritz "assaulted" him, causing a "dislocated sternoclavicular joint," "scratches," and "scrapes." (Doc. 12 at 4–5). He says his injuries were serious enough to warrant surgery, although, based on medical advice, Plaintiff participated in physical therapy only. (*Id.* at 5). In a prior Report and Recommendation, the Undersigned allowed Plaintiff to proceed with a

Fourth Amendment excessive force claim based upon these allegations. (Doc. 4 at 4, 7; Doc. 11 at 4).

Despite that Report and Recommendation, in his Motion, Defendant Moritz repeatedly cites cases involving the pleading standard for a state law assault claim while arguing that Plaintiff "cannot sustain [a] cause of action" against him. (*See* Doc. 31 at 9–10 (discussing the pleading requirement under Ohio Rev. Code § 2744.03(A)(6)); Doc. 35 at 7 (same)). Simply put, it appears that Defendant Moritz moves for judgment on a claim that Plaintiff does not bring. Still, even if Defendant Moritz cited applicable law, his Motion would fail.

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. As a result, "[c]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Lesowitz v. Tittle*, No. 5:17-cv-2174, 2019 WL 3006428, at *6 (N.D. Ohio July 10, 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). To determine if an officer's use of force violates the Fourth Amendment, the Court must decide "whether his actions are 'objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.'" *Martin v City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 388). Importantly, "[t]he test is reasonableness at the moment force is used." *Id.* Three factors guide the Court's analysis: "'[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, or whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Saalim*, 97 F.4th at 1004 (quoting *Graham*, 490 U.S. at 396–97). But at base, the Court must consider the "totality of the circumstances." *Id.*

Taking Plaintiff's allegations as true, he has done enough to allege a Fourth Amendment excessive force claim.  Notably, the crime for which Plaintiff was eventually charged—obstructing official business—is not a serious one.  So, "this fact weighs in favor of using less force when arresting" Plaintiff.  *Thacker v. Lawrence Cnty.*, 182 F. App'x 464, 472 (6th Cir. 2006); *see also Saalim*, 97 F.4th at 1008 (noting the plaintiff "had not been stopped for a severe crime" and finding this factor weighed in his favor).  Next, Plaintiff says that Defendant Moritz assaulted him before he was arrested or detained.  (Doc. 12 at 4 ("[D]efendants came past two No Trespassing signs, after then Chief Moritz assaulted the plaintiff, was falsely arrested for assault and detained on his porch.")).  This, too, "enhances the likelihood of a finding of excessive force," because "'[t]he general consensus [in the Sixth Circuit] is that officers cannot use force . . . on a detainee who . . . has been subdued, is not told he is under arrest, or is not resisting arrest.'"  *Saalim*, 97 F.4th at 1005 (quoting, in a parenthetical, *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009)).

That leaves the remaining factor of whether Plaintiff posed "an immediate threat to the safety of [Defendants] or others."  *Saalim*, 97 F.4th at 1004.  Based on the body camera footage provided by Plaintiff, Defendant Moritz argues that he used reasonable force to protect himself and the other Defendants.  (Doc. 35 at 3, 7–8 (claiming Plaintiff struck and pushed Defendant Moritz)).  But since the Court is limited only to the pleadings, these arguments are more appropriate for a later stage when the Court has the benefit of a fully developed record.

Additionally, Defendant Moritz argues he has immunity for a state law assault claim.  (Doc. 31 at 11–14).  Yet he fails to argue he has immunity for Plaintiff's Fourth Amendment excessive force claim.  (*Id.* at 12–13 (discussing only statutory immunity for an "assault" claim)).  As a result, the Court declines to consider at this stage whether Defendant Moritz is shielded by qualified immunity for this claim.  *See Bolick v. City of East Grand Rapids*, 580 F. App'x 314,

323 (6th Cir. 2014) (saying that qualified immunity is an affirmative defense which must be pled and raised); *Thomas v. Plummer*, 489 F. App'x 116, 120 n.5 (6th Cir. 2012) (noting that the district court may have erred when it assumed that a defendant intended to raise qualified immunity for a Fourth Amendment claim where the defendant only briefed state law immunity issues).  In sum, the Undersigned **RECOMMENDS** that Defendant Moritz's Motion (Doc. 31) be **DENIED** with respect to Plaintiff's Fourth Amendment excessive force claim against him.

Lastly, Defendants Johnson, Wilderman, and Arnett also move for judgment on Plaintiff's excessive force claim and note that Plaintiff does not allege that these Defendants used any force against him.  (Doc. 24 at 8–9).  Indeed, Plaintiff's Amended Complaint says that only Defendant Moritz assaulted him.  (Doc. 12 at 4).  And at this stage, Plaintiff is required to "allege . . . facts that demonstrate what *each* defendant did that violated the asserted constitutional right."  *Dillon*, 718 F. Supp.3d at 743 (internal quotation omitted) (emphasis in original).  But again, Plaintiff provides more facts in his briefing that are not included in his Amended Complaint.  (*See* Doc. 33 at 5 (stating that Defendants Arnett and Wilderman used force when they "jerked [Plaintiff] out the door of [his] home by [his] right arm")).

Therefore, the Court **HOLDS IN ABEYANCE** this portion of Defendants Wilderman's, Arnett's, and Johnson's Motion (Doc. 25) and **GRANTS** Plaintiff leave to amend this claim as well.  Plaintiff is **ORDERED** to file his amended complaint **on or before December 6, 2024**.  Once the Court receives the amended complaint, the Undersigned will issue a supplemental Report and Recommendation and screen the complaint under 28 U.S.C. § 1915.

### C.    Second Amendment Claim

Plaintiff also challenges Defendants' seizure of his firearms under the Second Amendment. (Doc. 12 at 3–5).  Once more, Defendants argue they are entitled to qualified immunity.  (Doc. 25 at 7–8; Doc. 31 at 5–6).  Because Defendants raise qualified immunity, Plaintiff must allege sufficient facts showing that (1) Defendants' conduct violated his Second Amendment right, and (2) that the right was clearly established at the time.  *See Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015) (discussing a plaintiff's burden on qualified immunity at the pleading stage).

Although the Second Amendment guarantees individuals the right to lawfully keep a firearm in their home for self-defense, that right is not unlimited.  *Dist. of Columbia v. Heller*, 554 U.S. 570, 626, 635 (2008).  Here, Plaintiff contends that Defendants violated his Second Amendment rights by seizing his firearms on February 23, 2023.  (Doc. 12 at 4, 7).  But courts in other circuits have repeatedly found that "[t]he mere occurrence of a firearm seizure is not enough to establish a Second Amendment violation."  *Crook v. San Bernardino Cnty. Sheriff's Dep't*, No. 5:22-cv-10, 2023 WL 8100579, at *6–7 (C.D. Cal. Sept. 30, 2023) (internal quotation omitted) (also rejecting an argument that the plaintiff's Second Amendment rights were "dramatically expanded" by *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022)); *see also Aikens v. Bond*, No. 21-cv-381, 2021 WL 5051134, at *4 (D. Del. Nov. 1, 2021); *Walters v. Wolf*, 660 F.3d 307, 317–18 (8th Cir. 2011); *Hopkins v. Claroni*, No. 1:13-cv-229, 2015 WL 2371654, at *6–7 (D. Me. May 18, 2015); *Harris v. Officer Hector Melchor*, No. 23-cv-1094, 2024 WL 3385177, at *11 (C.D. Ill. July 1, 2024); *Brodrick v. Wash. Cnty. Bd. of Cnty. Comm'rs*, No. 22-cv-271, 2023 WL 113723, at *2 (N.D. Okla. Jan. 5, 2023).  Instead, under this precedent, Plaintiff must show that Defendants also restricted him from obtaining other legal firearms.  *See Crook*, 2023 WL 8100579, at *7; *Walters*, 660 F.3d at 318 (finding no Second Amendment

violation and noting that, although the defendants seized one of plaintiff's firearms, they "did not prohibit [him] from retaining or acquiring other firearms"); *Harris*, 2024 WL 3385177, at *11 (holding the same); *Pierner-Lytge v. Mitchell*, 412 F.Supp.3d 1012, 1019–21 (E.D. Wisc. 2019) (finding no support in precedent for a Second Amendment claim where officers temporarily seized the plaintiff's firearms and she was unable to retain new ones due to personal finances).

Plaintiff cannot make that showing here.  His inability to lawfully procure new firearms stems from the CPO, not Defendants' actions.  (*See* Doc. 29 at 6–10).  Indeed, based upon Plaintiff's allegations, none of the Defendants had any involvement in the issuance of the CPO, nor are they responsible for its continuation.  (Doc. 12 at 4, 7 (saying only that Defendants served and executed provisions of the CPO)).

Still more, just this year, the Supreme Court found that temporarily disarming certain individuals subject to restraining orders was not violative of the Second Amendment.  *See U.S. v. Rahimi*, 144 S.Ct. 1889, 1903 (2024).  Although *Rahimi* addressed whether 18 U.S.C. § 922(g)(8) on its face violated the Second Amendment, the Supreme Court also broadly opined that "[w]hen a restraining order contains a finding that an individual poses a credible threat to the physical safety of [another], that individual may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect."  *Id.* at 1896.  That is what happened in this case. Based upon the Amended Complaint and the CPO, an Athens County court found Plaintiff posed a credible threat to the physical safety of another and temporarily restricted his ability to possess firearms as a result.  (*See* Doc. 12 at 4, 7 (challenging only Defendants' actions on February 23, not the issuance of the CPO itself or the Athen County court's findings)); Doc. 29 at 6–8 (finding Plaintiff "poses a credible threat of physical violence" and prohibiting his possession of firearms for one year while the CPO is in effect)).  And Defendants acted upon that restriction when they

confiscated his firearms. (Doc. 12 at 4). These circumstances, when considered against *Rahimi*, lend support to this Court's conclusion that Defendants' initial seizure of Plaintiff's firearms did not violate his Second Amendment rights.

And, even if Plaintiff's allegations could be construed as such a violation, Defendants are entitled to qualified immunity. To date, the exact contours of individual rights under the Second Amendment are not clearly established in the Sixth Circuit. "While significant precedent exists to assist courts in determining whether *laws and regulations* violate this Second Amendment right, there is little controlling law addressing when an individual's *seizure* of specific firearms is similarly violative." *Novak v. Federspiel*, No. 1:21-cv-12008, 2024 WL 1349298, at *16 (E.D. Mich. Mar. 29, 2024) (emphasis in original). In fact, neither the United States Supreme Court nor the Sixth Circuit have "addressed liability for constitutional tort claims or suggested that a law-enforcement officer might be subject to monetary damages for seizing firearms pursuant to a warrant." *Meeks v. Larsen*, 611 F. App'x 277, 286 (6th Cir. 2015); *see also Novak*, 2024 WL 1349298, at *16–17 (discussing the lack of guidance in this area). True, Defendants did not seize Plaintiff's firearms under a warrant. But even in the circumstances presented here, no precedent in this Circuit clearly establishes Plaintiff's Second Amendment right to be free from the temporary seizure of his firearms.

In sum, because Plaintiff's does not allege a violation of a clearly established right, the Undersigned **RECOMMENDS** that Defendants' Motions be **GRANTED** for his Second Amendment claim.

### D. Sixth Amendment Claim

Defendants also argue that Plaintiff fails to adequately plead his Sixth Amendment claim against them. (Doc. 25 at 10–11; Doc. 31 at 8–9). Once more, the Undersigned agrees.

The Sixth Amendment guarantees certain rights "[i]n all criminal prosecutions," including the rights to a speedy and public trial, to an impartial jury, to be informed of the nature and cause of the accusation, to confront witnesses, and to be represented by counsel. *See* U.S. Const. amend. VI. In his Amended Complaint, Plaintiff alleges that Defendant Johnson violated Plaintiff's Sixth Amendment rights by filing an "intentional false report/charge." (Doc. 12 at 3). But "it is the Fourth Amendment that 'establishes the minimum constitutional standards and procedures . . . for arrest and for ensuing detention.'" *Bernard v. Nashville Metro Gov't*, No. 3:18-cv-1366, 2019 WL 2162949, at *3 (M.D. Tenn. May 17, 2019) (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)) (cleaned up). Nowhere else in the Amended Complaint does Plaintiff cite the Sixth Amendment or plead facts that could give rise to a Sixth Amendment claim. (*See generally* Doc. 12 at 4–5, 7 (discussing only facts for claims brought under the Second and Fourth Amendments)). Consequently, the Court cannot determine what other type of Sixth Amendment claim Plaintiff attempts to bring. Accordingly, the Undersigned **RECOMMENDS GRANTING** Defendants' Motions for Plaintiff's Sixth Amendment claims.

### E. Motion to Stay Discovery and the Dispositive Motion Deadline

Finally, Defendants move to stay all discovery and the dispositive motion deadline pending a ruling on their Rule 12 motions. (Doc. 37). Their Motion is **GRANTED in part** and **DENIED in part**. Discovery may proceed for Plaintiff's excessive force claim against Defendant Moritz only; all other discovery is **STAYED**. Once Plaintiff amends his complaint, the Undersigned will determine whether discovery should proceed for any additional claims or Defendants. For now, the dispositive motion deadline of January 6, 2025, remains in place. (Doc. 19 (case schedule)).

### III. CONCLUSION

For the foregoing reasons, the Undersigned **ORDERS** the following:

- Defendants Wilderman's, Arnett's and Johnson's Motion (Doc. 25) for Plaintiff's unconstitutional arrest and excessive force claims and Defendant Moritz's Motion (Doc. 31) for Plaintiff's unconstitutional arrest claim are **HELD IN ABEYANCE**.

- The Undersigned **GRANTS** Plaintiff leave to amend his complaint for his unconstitutional arrest and excessive force claims. He is **ORDERED** to file his amended complaint **on or before December 6, 2024**.

- Defendants' Joint Motion to Stay Discovery and Dispositive Motion Deadlines (Doc. 37) is **GRANTED in part** and **DENIED in part**. Discovery for Plaintiff's excessive force claim against Defendant Moritz may proceed, but all other discovery is **STAYED**. Dispositive motions are still due on January 6, 2025.

Finally, the Undersigned **RECOMMENDS** the following:

- Defendants Wilderman's, Arnett's, and Johnson's Motion (Doc. 25) should be **GRANTED**, except for Plaintiff's unconstitutional arrest claim.

- Defendant Moritz's Motion (Doc. 31) should be **GRANTED in part** and **DENIED in part**. Plaintiff's Fourth Amendment excessive force claim against him should proceed. Otherwise, except for Plaintiff's unconstitutional arrest claim, Defendant Moritz's Motion should be **GRANTED**.


Date: November 18, 2024              /s/ Kimberly A. Jolson
                                     KIMBERLY A. JOLSON
                                     UNITED STATES MAGISTRATE JUDGE

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).